**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: August 26, 2013.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 12-51516-CAG |
| | § | |
| JOSE D. SALZILLO AND PERLA SALZILLO, | § | |
| | § | |
| | § | |
| Debtors. | § | CHAPTER 7 (Converted from Chapter 13) |

| | | |
|---|---|---|
| ROCIO SUSANNA ZARAGOZA AND HUEMAN D. P. RODRIGUEZ, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | ADV. NO. 13-05007-CAG |
| v. | § | |
| | § | |
| JOSE D. SALZILLO, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION REGARDING PLAINTIFFS' COMPLAINT
### UNDER 11 U.S.C § 523

This is the Court's Memorandum Opinion regarding Plaintiffs Rosario Susanna Zaragoza's ("Zaragoza") and Hueman D. P. Rodriguez's ("Rodriguez") Adversary Complaint seeking the Court to find certain debts owed to the Plaintiffs nondischargeable under 11 U.S.C. §

523(a)(2)(A) and (6). [1]  The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157

and 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I).  Venue is proper

under 28 U.S.C. § 1408(1).  The District Court's Standing Order of Reference refers this matter

to the Court.  This Memorandum Opinion constitutes the Court's Findings of Fact and

Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052.  For reasons stated

in the Memorandum Opinion, the Court finds that the Defendant's debts owed to the Plaintiffs

are dischargeable.

**BACKGROUND**

A.      The Promissory Note and Investment Contract

        In August of 2011, the Plaintiffs—husband and wife—met with the Defendant and an

accountant named Esther Stanton ("Stanton") to execute two separate documents.  Stanton, as

the Court learned during its own examination of the Defendant, is Plaintiff Rodriguez's sister.

She also worked for the Defendant as his accountant, both for his personal finances and the

finances of The Cake Shop, LLC ("The Cake Shop"), a business the Defendant and his wife own

and operate.

        The first document signed in August 2011 was a promissory note between Zaragoza and

the Defendant (Plaintiff's ("Pl.'s") Ex. A), the second a document labeled "Investment Contract"

between Rodriguez and the Defendant (Pl.'s Ex. F).  From the Plaintiffs' Complaint, the Joint

Pretrial Order, and vague testimony of the parties, it appears that the parties intended these

documents to memorialize or somehow renew pre-existing debts from 2005 upon which the

Defendant had defaulted.  Stanton testified that the parties wanted to renew the debt and work

---

1 The Plaintiffs noted at trial that the Plaintiff Hueman D. P. Rodriguez actually goes by Hueman D. Paz.  Because the complaint, answer, and pre-trial order refer to the Plaintiff as Hueman D. P. Rodriguez, the Court will do the same.

out a payment plan because the previous debt had "expired."[2] The parties did not provide evidence regarding the debts from 2005, including how the debts originated or how much was originally owed under the contracts.

Regarding the 2011 promissory note and investment contract, it is unclear who prepared the documents and there is also disputed testimony as to when they were prepared and executed. The Plaintiffs and Stanton contend that the Defendant prepared the documents during their meeting with him on August 6, 2011. The Defendant claims that Stanton prepared the documents herself before the August 6, 2011, meeting. The parties do not dispute that a set of amortization schedules were prepared during the meeting and used in drafting the agreements. (Pl.'s Ex. I). The amortization table has a timestamp of August 5, 2011. The promissory note was notarized on August 29, 2011, and according to Rodriguez neither he nor his wife was present at the time.

About a month before the August 2011 meeting, Stanton stopped working for the Defendant and recommended to her brother and sister-in-law that they take steps to secure repayment of their 2005 debts from the Defendant. The parties agree that it was on Stanton's recommendation that the parties met to execute both the promissory note and the investment contract. Notably, the Plaintiffs did not give or agree to give the Defendant any money when they signed the promissory note and the investment contract; rather the documents were meant only to work out a payment plan for the debts owed from 2005. According to the promissory note, the Defendant owed Zaragoza $61,751.04 plus a 12 percent annual interest rate. (Pl.'s Ex.

---

2 The Court can only speculate as to what this means. Most likely the statute of limitations ran on the underlying debt, although the Court never received testimony to that effect.

1).  Under the investment contract, the Defendant owed Rodriguez $27,664.15 plus a 15 percent annual interest rate.  (Pl.'s Ex. 6).[3]

B.    The Defendant's Representations and Post-Dated Checks

As the Plaintiffs had not been paid much, if any, of the amount Defendant owed to them over a six-year period,[4] the Plaintiffs were concerned with the Defendant's ability to pay on the new contracts.  The Defendant reassured them that they had nothing to worry about and that he would be able to pay them this time without difficulty, even though he could not pay them at the moment.  As a sign of his future ability to pay, the Defendant gave the Plaintiffs postdated checks, indicating the Plaintiffs would be able to cash the checks on the date listed on each check.  The funds for the checks would be linked to what the Defendant termed his "strongest" bank account.  The Defendant gave Zaragoza 23 checks, each in the amount of $2,500.  The first was postdated August 25, 2012.  (Pl.'s Ex. B).  The rest were postdated for the 15th of every month beginning of September of 2011 and continuing through August of 2013.  (Pl.'s Exs. C, D, and E).  The Defendant also gave three post-dated checks to Rodriguez.  The first two were each for $300 and postdated September 30, 2011, and October 30, 2011, respectively.  (Pl.'s Ex. H).  The third check was postdated January 30, 2012, and listed an amount of $28,010.  (Pl.'s Ex. G).  The Plaintiffs testified that they felt they could rely on these checks because the Defendant's former accountant, Stanton, told them that the Defendant had a practice of selectively issuing stop orders on check he had paid previously given to other creditors, and that he would stop checks from other creditors in order to have enough funds in his account to pay the Plaintiffs.

3 The exact language of the investment contract states that "[t]he amount to being invested [sic] on July 1, 2011 is $27,644.15 . . . ."  Because the parties testified that no money was exchanged as part of the new contract, the Court believes the parties intended the $27,644.15 amount to represent what Rodriguez had paid the Defendant *as of* July 1, 2011.

4 Again, the Court received conflicting testimony regarding whether the Defendant had paid the Plaintiffs any money between 2005 and 2011.

Based on the postdated checks and the representations of the Defendant, the Plaintiffs signed their respective documents.

Zaragoza attempted to cash or deposit her first check on August 25, August 26, and August 29, 2011.  Each time, the bank rejected the check for insufficient funds.  (Pl.'s Ex. B).  Subsequently, Zaragoza attempted to cash every postdated check the Defendant gave her each month through April of 2012, and every check was rejected for insufficient funds.  (Pl.'s Exs. C, D, and E).  The Defendant's $28,010 check for Rodriguez was rejected due to insufficient funds on March 30, 2012.  (Pl.'s Ex. H).

The Defendant filed Chapter 13 bankruptcy on May 11, 2011, and the Court converted the case to Chapter 7 on August 24, 2011.  The Plaintiffs then filed this adversary proceeding on January 18, 2013, alleging that the debt owed to them is nondischargeable under 11 U.S.C. § 523.

## PARTIES' CONTENTIONS

The Plaintiffs claim that the debts the Defendant owes them arise from fraud, making the debt nondischargeable under 11 U.S.C. § 523(a)(2)(A).  Specifically, the Plaintiffs contend that the Defendant's following statements were false:  (1) that the post-dated checks would clear the bank without problems, and (2) other "false representations which were material to the formation of the contract." The Plaintiffs claim the Defendant's actions show he never had any intention of paying the Plaintiffs the money he owed them.  Further, the Plaintiffs claim that the Defendant made these statements to induce the Plaintiffs to sign the contracts, and that they justifiably relied on the statements.  The Plaintiffs claim the entire amount of the debts owed to them are the damages arising from the Defendant's fraud.  The Plaintiffs also claim the Defendant's

fraudulent acts were calculated to willfully and maliciously injure the Plaintiffs, and the debt is therefore nondischargeable under Section 523(a)(6).

Defendant claims he always intended to pay the Plaintiffs, and that the promissory note and investment contract were honest efforts by him to assure the Plaintiffs that he would pay them. He further argues that he did not know at the time he told the Plaintiffs he would be able to pay them that he would in fact not have funds to pay them later, and that he lacked any malicious intent necessary to satisfy Section 523(a)(6).

### LEGAL ANALYSIS

A.    <u>11 U.S.C. § 523(a)(2)(A)</u>

Under Section 523(a)(2)(A) of the Bankruptcy Code, debts "for money, property, services, or an extension, renewal, or refinancing of credit" are not dischargeable if the debt was "obtained by false pretenses, a false representation, or actual fraud."   11 U.S.C. § 523(a)(2)(A) (West 2012).  In order to succeed under Section 523(a)(2)(A), a creditor must prove (1) that the debtor made a representation; (2) that the debtor knew was false; (3) that the debtor made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied upon; and (5) that the creditor sustained a loss as a "proximate result" of its reliance.  *General Electric Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th. Cir. 2005) (citing *AT&T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001)).  The creditor must prove all five elements by a preponderance of the evidence.  *Id.*

1. *False Statement with Intent to Deceive*

To succeed on a fraud claim under Section 523(a)(2)(A), any misrepresentation must be "knowingly and fraudulently made."  *Acosta*, 406 F.3d at 372.  Parties may infer intent to deceive from "reckless disregard for the truth or falsity of a statement combined with the sheer

magnitude of the resultant misrepresentation." *Id.* (citing *In re Norris*, 70 F.3d 27, 30 n. 12 (5th Cir. 1995)). An honest belief that a fact is true, even if it is unreasonable, does not amount to fraud. *Id.* (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st. Cir. 1997)).

Section 523(a)(2)(A), however, only applies to past or current facts. *Labella v. Steves (In re Steves)*, 2013 WL 3230125 (W.D. Tex. Jun. 26, 2013) (citing *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 484 (5th Cir. 1992). "[A] promise to perform acts in the future is not considered a qualifying misrepresentation merely because the promise is subsequently breached." *Allison*, 960 F.2d 481. A misrepresentation of a present intention to perform in the future is considered a present fact and is therefore actionable under Section 523(a)(2)(A). *Id.*

The Plaintiffs group the Defendant's allegedly fraudulent statements into two groups: (1) statements regarding the ability for the Plaintiffs to cash postdated checks in the future, and (2) other "false representations which were material to the formation of the contract." The statements about cashing postdated checks included the Defendant reassuring the Plaintiffs that they had nothing to worry about, that the postdated checks were connected to the Defendant's "strongest account," and that the Plaintiffs would be able to cash the checks on the dates listed on each check. There is no evidence to suggest that assuring the Plaintiffs that they had nothing to worry about was a false statement made with intent to deceive. The Defendant testified that he honestly believed his business would turn around and that he would be able to pay the Plaintiffs. The Court finds this testimony credible and has no evidence to suggest the contrary other than the fact that the Plaintiffs were ultimately not paid, which is insufficient to prove fraud. The statement that the checks were connected to the Defendant's strongest bank account is also not a false misrepresentation because the parties did not produce any evidence that the statement was false.

As for "false representations material to the formation of the contract," the Court did not hear any specifics other than a general promise that the Defendant would be able to pay the Plaintiffs in the future. This is a future fact that is not actionable under Section 523(a)(2)(A). To the extent that this statement is a representation of present intent to pay, the Court has no evidence to suggest that the Defendant had no intention of paying the Plaintiffs other than the fact that he ultimately did not pay the Plaintiffs any of the money owed except for three payments of $300 each. The Court finds this evidence insufficient to establish a false representation. Indeed, the evidence suggests that the Defendant was, like many debtors who file bankruptcy, optimistic of the chances that his business would recover. Whether this optimism was warranted is not for the Court to decide so long as he had an honest belief that he would be able to pay the Plaintiffs. The evidence provided does not suggest that the Debtor truly had no intention of repaying his debts to the Plaintiffs, and there is no false representation under Section 523(a)(2)(A).

2. *Reliance*

The Plaintiffs may have proven that they relied on the Defendant's statements, but did not prove that their reliance was justifiable. A plaintiff must prove both in order to prevail on a claim for false representation. *Mercer,* 246 F.3d at 411. Actual reliance is the equivalent of causation-in-fact, which is defined as a "substantial factor in determining the course of conduct that results in . . . loss." *Id.* (emphasis removed) (citing RESTATEMENT (SECOND) OF TORTS § 537 cmt. a). This level of reliance "requires little of the creditor." *Mercer*, 246 F.3d at 411 (citing *City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277, 284 (11th Cir. 1995)). In the case of credit card fraud, as in *Mercer*, "an issuer usually will be able to establish *actual* reliance

by showing it would *not* have approved the loan in the absence of debtor's promise to pay (through card-use)." 246 F.3d at 411.

The parties do not dispute that the Plaintiffs signed a promissory note and an investment contract in August of 2011. The Plaintiffs further testified that they relied on the Defendant's reassurances that he would be able to pay them, and that had they known the Defendant was not going to pay them under the terms of their new agreements, neither Plaintiff would have agreed to or signed them. Unlike *Mercer*, however, the Plaintiffs did not loan the Defendant money in the agreement signed in August 2011. The investment contract and promissory note did not obligate the Plaintiffs to pay any additional money or provide any additional benefit to the Defendant. Testimony from the parties indicates that the only purpose of the investment contract and promissory note was to establish a payment schedule on a debt that was over six years old and had "expired."[5]

The only possible reliance comes from the Plaintiffs agreeing to abide by the payment schedule that the parties created in the promissory notes and executory contracts, tantamount to an extension of credit. Agreeing to such a schedule may have given the Defendant additional time to come up with money before the Plaintiffs chose to exhaust other remedies, such as a state court lawsuit. Even this argument is tenuous because the Plaintiffs provided no evidence that they intended to seek a more immediate method to receive payment. Even considering the low bar Plaintiffs must meet for actual reliance, the Plaintiffs did not meet their burden of proving that they relied on the Defendant's statements for any purpose other than physically signing the document, which did not obligate the Plaintiffs to do anything or to surrender any rights or property.

---

5 The Court again highlights that it received no evidence whatsoever regarding the original debt, including any amounts, payment schedules, or other terms.

Even assuming the Plaintiffs relied in any way on the Defendant's statements, they did not prove that the reliance was justifiable.  Justifiable reliance, described as "an intermediate level of reliance," is a subjective standard that is more relaxed than the objective reasonable reliance standard.  *Field v. Mans*, 516 U.S. 59, 74 (1995).  This standard does not remove reasonableness from the equation, however, "for the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact."  *Id.* Reliance is justifiable, rather, if (1) the promisor intends to perform, and (2) the promisee has reason to believe that the agreement will be carried out.  *Mercer*, 246 F.3d at 416 (citing RESTATEMENT (SECOND) OF TORTS § 544).  The Court must look at both elements from the perspective of the promisee, meaning the first element is not focused on whether the promisor truly *intends* to perform, but whether the promisee is justified in *believing* that the promisor intends to perform.  *Id.*  The second element actually focuses whether any obstacle or physical impossibility makes it impossible for the agreement to be carried out.  *Id.* If such an obstacle exists, the Court must determine whether the promisee knew of its existence, rendering reliance unjustifiable. *Id.*

Here, the Plaintiffs had reason to believe that the Defendant's true ability to pay would be questionable at best.  The Defendant has been indebted to the Plaintiffs since 2005, with almost none of the money repaid.  At the time the Plaintiffs signed the 2011 documents, the Defendant had not repaid them their money over a six-year period.  Further, Plaintiff Rodriguez's own sister worked as the Defendant's accountant up until one month prior to the meeting on August 6, 2011, meaning she had a full picture of the Defendant's finances and his ability to pay, or lack thereof.  Moreover, the Plaintiffs knew that the Defendant was regularly stopping checks that had been written to other creditors.  Although the Plaintiffs testified that this indicated that the

Defendant was going to great lengths to make sure the Plaintiffs received their money, this testimony indicates to the Court that the Plaintiffs knew the Defendant was in dire enough financial straits to have to choose to stop the bank from processing checks he had already written. The Court therefore finds that the reliance on the Defendant's statements that he would be able to pay the Plaintiffs this time, despite the fact that he had not paid them back over the course of several years, was not justifiable and therefore fails the reliance element of fraud.

3. *Damages*

Even if Plaintiffs could prove the first four elements of fraud, they cannot prevail on their claim because they did not suffer damages as a result of signing these new contracts. At the time the Plaintiffs signed the promissory note and the investment contract, the Plaintiffs did not give or promise to give any additional money, nor did they give up any legal right. The debts originated in 2005, and the Defendant still owed those debts after the Plaintiff signed the agreement. Had the parties not executed the promissory document and the investment contract, the Plaintiffs' loss would have been the same as it is now. The Plaintiffs suffered no loss as the result of signing the promissory note and investment contract. As such, even if the Defendant made fraudulent representations with the intent to deceive the Plaintiffs, and the Plaintiffs relied on those statements, they still cannot prove damages sufficient to make a claim under Section 523(a)(2)(A).

B.    11 U.S.C. § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code states that debts "for willful and malicious injury" are not dischargeable in a Chapter 7 case. 11 U.S.C. § 523(a)(6); ***Kawaahau v. Geiger***, 523 U.S. 57 (1998). Under *Geiger*, the word "willful" modifies the word "injury," meaning a debtor must have intended not only to commit an act resulting in the plaintiff's injury, but to also

inflict the injury itself. 523 U.S. at 61. Accordingly, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64.

The Fifth Circuit employs a two-part test to determine willful and malicious injury. ***In re Williams***, 337 F.3d 504 (5th Cir. 2003). An injury is willful and malicious if the plaintiff proves "either an objective substantial certainty of harm or a subjective motive to cause harm." *Id.* at 509 (citing ***In re Miller***, 156 F.3d 598, 603 (5th Cir. 1998)). To establish an objective substantial certainty of harm, the court must "analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." ***In re Powers***, 421 B.R. 326, 335 (Bankr. W.D. Tex. 2009). Courts find a subjective motive to cause harm when a defendant acts "deliberately and intentionally, in knowing disregard of the rights of another." ***In re Gharbi***, No. 08-11023-CAG, 2011 WL 831706 (Bankr. W.D. Tex. Mar. 3, 2011) *aff'd*, A-11-CA-291 LY, 2011 WL 2181197 (W.D. Tex. June 3, 2011) (citing ***In re Miller***, 156 F.3d at 605-06)).

The evidence the Plaintiffs provided does not show that the Defendant willfully and maliciously injured the Plaintiffs under either test. The Plaintiffs argued in closing argument that the Defendant's lack of repayment shows he planned not to pay them and that his conduct was willful and malicious. The Defendant's failure to pay the Plaintiffs their money, while regrettable, is not proof in and of itself of willful and malicious injury. A reasonable person could not find under the circumstances that the Defendant had a substantial certainty to cause harm, and no evidence provided by the Plaintiffs shows that the Defendant has a subjective intent to cause harm.[6] Indeed, because the original debt had "expired," the Defendant's willingness to

---

6 In their Complaint, the Plaintiffs claim the Defendant's fraudulent actions under Section 523(a)(2)(A) also amount to willful and malicious injury under Section 523(a)(6) (ECF No. 1). The Plaintiffs did not plead any other grounds

enter into new agreements suggests a desire to repay his creditors if at all possible.  The Court

finds that the Plaintiffs have not proven willful and malicious injury under Section 523(a)(6).

### CONCLUSION

After reviewing the evidence provided the parties as well as the applicable case law, the

Court finds that the Defendant did not make false representations, nor did he act to willfully and

maliciously injure the Plaintiffs.  Accordingly, the Court finds that the debts the Defendant owes

the Plaintiff do not meet the exceptions to discharge under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6).

The debts set forth in the promissory note and investment contract are dischargeable.  The Court

will enter a judgment concurrently with this Memorandum Opinion.

### # # #

---

for a finding of willful and malicious injury, nor did they provide any additional evidence at trial.  A finding of
fraudulent misrepresentation under Section 523(a)(2)(A) does not automatically entitle a plaintiff to a
nondischargeability finding under Section 523(a)(6).  Further, because the Court finds that the Defendant did not
make a false representation under Section 523(a)(2)(A), the Plaintiffs' grounds for relief for willful and malicious
injury are rendered moot.